**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Todd J. Delay,

       Plaintiff,
  vs.

Rosenthal Collins Group, LLC,

       Defendants.

Civil Action 2:07-CV-568
JUDGE GRAHAM
Magistrate Judge King

**OPINION AND ORDER**

Plaintiff Todd J. Delay ("Plaintiff" or "Delay") brings this action against Defendant Rosenthal Collins Group, L.L.C. ("Defendant" or "RCG") for indemnification and breach of contract. Plaintiff asserts claims under federal and state common law and state statutory law. This matter is before the Court on Defendant's Motion to Dismiss. Defendant argues that the Plaintiff's Complaint fails to state a claim upon which relief can be granted. The Court grants in part and denies in part the Defendant's Motion to Dismiss.

**I.    FACTUAL BACKGROUND**

The Commodities Futures Trade Commission ("CFTC") is an independent federal regulatory agency charged with the responsibility of administering and enforcing provisions of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq* and its regulations 17 C.F.R. *et seq* (hereinafter "CEA"). Defendant RCG is an Illinois Limited Liability Company registered as a "futures commission merchant" ("FCM") with the CFTC and operates numerous trades desks on the floors of the Chicago Board of Trade and the Chicago Mercantile Exchange ("CME"). 7 U.S.C. § 1a(20) defines a

"futures commission merchant" as an individual, association, partnership, corporation or trust that:

>   (A)   "is engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility; and
>
>   (B)   in or in connection with such solicitation or acceptance of orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom.

The CME is a "designated contract market" for trading feeder cattle futures contracts and is regulated by the CFTC under the CEA and the regulations promulgated thereunder. See 7 U.S.C. §7.

In January of 2002, Plaintiff Delay, an Ohio resident, entered into an employment relationship with Defendant. Pursuant to a contract between the parties, Plaintiff was hired to serve as branch manager of a new RCG branch office located in Columbus, Ohio. The Plaintiff was also registered as an "associated person" of Defendant with the CFTC. 17 C.F.R.§ 1.3(aa) defines an associated person, in pertinent part, as any natural person who is associated in any of the following capacities with:

>   (1) A futures commission merchant as a partner, officer, or employee (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (I) the solicitation or acceptance of customers' or option customers' orders (other than in a clerical capacity) or (ii) the supervision of any person or persons so engaged[1] [.]

An associated person must be registered with the CFTC in accordance with its regulations. See 7 U.S.C. § 6k(4) (any person who wants to be registered as an associated person of a futures commission merchant shall apply to the CFTC and shall continue to report and furnish to the CFTC

---

[1] The CFTC defines "Associated Person" as "an individual who solicits or accepts (other than in a clerical capacity) orders, discretionary accounts, or participation in a commodity pool, or supervises any individual so engaged, on behalf of a futures commission merchant, an introducing broker, a commodity trading advisor, a commodity pool operator, or an agricultural trade option merchant."

any information as it may require); 17 C.F.R. § 3.12(a) (making it unlawful for a person acting as an associated person to fail to register with the CFTC); 17 C.F.R. § 3.12(c) (setting forth the requirements for registration as an associated person, including the application process and necessity for the applicant to have a sponsor, and reporting requirements to the National Futures Association). The CEA also gives the CFTC power to discipline associated persons for violations of the CEA, see e.g.,7 U.S.C. §§ 6(b), 6(c), 6(d), 6(I), 6(o), 13, including suspension and revocation of the associated person's registration under the CEA. See, 7 U.S.C. § 12. The CEA gives the CFTC exclusive jurisdiction over all accounts and transactions in commodities. 7 U.S.C. § 2.

On September 1, 2005, Plaintiff received notice from Defendant that it was terminating the employment relationship as of September 2, 2005. On September 29, 2005, the CFTC filed a Complaint in the United States District Court of the Northern District of Illinois, and on December 7, 2005, the matter was transferred to the United States District Court of Nebraska ("Nebraska action"). In the Nebraska action[2], the CFTC alleged that Plaintiff violated several provisions of the CEA by manipulating feeder cattle futures contracts, attempting to manipulate feeder cattle futures contracts, and knowingly reporting false information to the USDA for inclusion in the Chicago Mercantile Exchange Feeder Cattle Index. See 7 U.S.C. §§ 6(c), 6(d), and 13(a)(2), (b). The CFTC also alleged that the Plaintiff violated the CEA by exceeding the speculative position limits for feeder cattle futures contracts in violation of 7 U.S.C. § 6a(c) and failing to diligently supervise the

---

[2] Two other individuals were named in the CFTC Complaint: Jack McCaffery and John D. Lawless. Mr. McCaffery, who resides in Nebraska, is the president of a Nebraska feedlot, North Platte Feeders (NFP), a futures customer of Delay. Plaintiff Delay is also a customer of NFP. Mr. Lawless also resides in Nebraska and is a feedlot manager at Imperial Beef. Delay is also a customer of Imperial Beef. The allegations in the Nebraska actions involved transactions between Delay and these businesses.

handling of commodity interest accounts at Defendant's Columbus, Ohio, office in violation of 17 C.F.R.§ 166.3.  Defendant RCG was not a party to the Nebraska action.  All claims made against the Plaintiff in the Nebraska action arose from alleged violations of the CEA and/or its regulations.

On November 17, 2006, the Nebraska action was concluded in Plaintiff's favor.  In his opinion, the Honorable Richard G. Kopf, Judge of the United States District Court of Nebraska, determined that the commission "failed to prove by a preponderance of the evidence that Delay manipulated or attempted to manipulate the feeder cattle futures market or that the cattle sales information he caused to be reported was false or misleading." See Commodity Futures Trading Commission v. Delay, No. 350, 05-CV-05026 (D. Neb. Nov. 17, 2006). Although the Court found that the CFTC failed to meet its burden, Judge Kopf did note that the transactions were "suspicious" and that Delay's actions affected the price of the CME cattle futures contract. See Id. at 2. The Court further found that the CFTC was "substantially justified" in bringing the action against Delay. Id. at 5.

On May 16, 2007, Plaintiff filed suit against Defendant in the Franklin County, Ohio, Court of Common Pleas for indemnification and breach of contract.  The matter was removed to this Court on June 15, 2007, pursuant to this Court's diversity jurisdiction. See 28 U.S.C. § 1332.  Plaintiff's complaint alleges two causes of action. First, Plaintiff seeks indemnification for all expenses, including attorney's fees, actually and reasonably incurred by Plaintiff in connection with the Nebraska action. Second, Plaintiff seeks damages for breach of the employment contract. Specifically, Plaintiff asserts that the Defendant breached the contract when it failed to give ninety days notice before terminating the employment relationship.  Defendant asserts that Plaintiff is not entitled to indemnification under any applicable law, and further that Plaintiff was fired for cause

and therefore the ninety day notice requirement was not applicable.

## II.     STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Scheurer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974); Roth v. Steel Prods v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1982). A complaint may be dismissed for failure to state a claim only where "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102 (1957). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is no insurmountable bar to relief. Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978).

Because a motion under Rule 12(b)(6) is directed solely at the complaint itself, the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. Scheurer, 416 U.S. at 236; Roth Steel Prods., 705 F.2d at 155; *see also* Bell Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1965 (2007)(Rule 8 "does not impose a probability requirement at the pleading stage"). A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. Weiner v. Klais & Co., Inc. 108 F.3d 86, 88 (6th Cir. 1997). The court is not required to accept as true unwarranted legal conclusions or factual inferences. Morgan v. Church's Fired Chicken, 829 F. 2d 10, 12 (6th Cir. 1987). Though the

complaint need not contain detailed factual allegations, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Bell Atlantic Corp., 127 S.Ct. at 1964-65; Associated Gen. Contractors of Cal., Inc v. Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 902 (1983). Plaintiff must provide more than labels and conclusions, or a formulaic recitation of the elements of a cause of action, Bell Atlantic, 127 S.Ct. at 1965, and the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986).

### III.   DISCUSSION

####    A.   Indemnification

Indemnification involves "shifting the entire loss from one wrongdoer to another." Baker, Watss & Co v. Miles & Stockbridge, 876 F 2d 1101, 1103 (4th Cir. 1989). The complaint in an action for indemnity must set forth a legal and factual basis sufficient to demonstrate an actual cause of action for indemnity. Askanase v. Fatjo, No. H-91-3140, 1993 U.S. Dist. LEXIS 14598 (S.D. Tx. July 23, 1993) (only if a complaint demonstrates the existence of a special duty creating a right to indemnity does it survive a motion to dismiss). An action does not become an action for indemnity merely because the pleader has so denominated it. Id.

Plaintiff asserts that he is entitled to indemnification for his legal expenses pursuant to federal law, as well as the laws of the State of Ohio and the State of Illinois. Defendant asserts that there is no federal right to indemnification. Defendant further argues that the Court must apply Illinois law and that under Illinois law, there is also no right to indemnification. Accordingly, Defendant asks this Court to dismiss the Plaintiff's Complaint for indemnification.

6

As an initial matter, the Defendant's reliance on the "American Rule" as grounds for determining that Plaintiff is not entitled to costs of defense is misplaced. The American Rule generally provides that each litigant in an action pay his own attorney's fees and limits the recovery of attorney's fees by a "prevailing party." <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616 (1975) ("the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser). Here, there was no prevailing party in the underlying litigation with the Defendant; instead the Plaintiff was the prevailing party in litigation with the CFTC, a third party unrelated to the case against the Defendant RCG.  In an indemnification case such as the one at hand, there is no "prevailing party" in an underlying case. <u>First African Trust Bank, Ltd. v. Bankers Trust Co</u>., No. 94 Civ. 4995 (RPP), 1995 U.S. Dist. LEXIS 9952, (S.D.N.Y. July 14, 1995) (where plaintiff seeks reimbursement of legal expenses it incurred as defendant's agent, the American Rule governing attorneys' fees to prevailing party does not apply). Thus the American Rule is not instructive in resolving this matter.

1. **Federal Law**

There is no federal statutory or common law right to indemnification under the facts of this case.  The Commodities Exchange Act, under which the Nebraska action was brought, contains no provision for reimbursement of attorney's fees for brokers of a federal commodity merchant. <u>Resolution Trust Corp. v. Krantz</u>, 1991 U.S. Dist. LEXIS 10171, *14 (N.D.Ill. July 24, 1991)(the CEA does not explicitly provide for indemnification).  There is also no implied right of indemnification under the CEA. <u>Id.</u> at *16 (there is no indication of explicit or implicit legislative intent to provide for indemnification among those liable under the CEA). Where there is no implied right under federal law, the Court must look to the common law to determine whether

7

indemnification is available.  Id. at *17.  However, "indemnification is also not an area where Congress has given the federal courts authority to create common law." Id.;See Texas Industries, Inc. v. Radcliff Materials, Inc.  451 US 630, 640, 101 S. Ct. 2061, 2067 (1981) (courts have the power to fashion  federal common law only where "a federal rule of decision is necessary to protect uniquely federal interests and where Congress has given the courts the power to develop substantive law"); see also King v. Gibbs, 876 F.2d 1275, 1282 (7th Cir. 1989)(the federal government has "no conceivable stake in the indemnification of corporate officers and directors and the distribution of power in the federal system is not implicated).  Thus there is no federal right to indemnification.

Denying indemnification claims arising out of alleged violations of the Commodity Exchange Act serves the Act's underlying purpose.  The purpose of the CEA has been stated to be "to insure fair practice and honest dealing on the commodity exchanges and to provide a measure of control over those forms of speculative activity which too often demoralize the markets to the injury of producers and consumers and the exchanges themselves." Deaktor v. L. D. Schreiber & Co., 479 F.2d 529, 534 (7th Cir. 1983); see also 7 U.S.C § 5 (the purpose of the act is to "serve the public interests . . . through a system of effective self-regulation" and to "to deter and prevent price manipulation," to "ensure the financial integrity of all transactions subject to this act" and "to protect all market participants from fraudulent or abusive practices").  The Security Exchange Act has a similar remedial and deterrent purpose, and it has been repeatedly held that to allow indemnification under the federal securities laws would be to thwart the public policy underlying the security laws. Baker v. BP America, Inc., 749 F. Supp. 840, 845 (N.D. Ohio 1990)  (indemnification would  "run counter to the basic policy of the federal securities laws to allow a securities wrongdoer . . .  to shift its entire responsibility for federal violations on the basis of a collateral state action for

8

indemnification"); First Golden Bancorporation v. Weiszmann, 942 F.2d 726, 728 (10th Cir. 1991) (adopting the notion that indemnity contravenes "the public policy enunciated by the federal securities laws"). Given that the purpose of the CEA is to protect investors and consumers from fraud by a commodities broker or merchant, it makes sense to extend the public policy against indemnification to actions arising out of the CEA  See Krantz, 1991 U.S. Dist. LEXIS 10171 at * 18, fn 11 (because Section 2(a)(1) of the CEA places liability on both the FCM and the broker, "to imply indemnity would be to abrogate that statutory placement [of] 'dual' full responsibility").

The Plaintiff has failed to state a claim for indemnification under federal law.

**2.     Indemnification Under State Law**

The Plaintiff next seeks indemnification under either Illinois or Ohio law.  The Court finds that state law does not apply to claims of indemnification arising out of charges of violations of trading rules under the CEA.  Generally, liability for indemnification is determined under applicable state law. Kennedy v. Pennsylvania R.R. Co., 282 F.2d. 705, 709 (3d Cir. 1960). A significant exception to that rule has developed in cases brought under the federal securities laws.  Claims for indemnification arising from alleged violations of federal securities law are governed by federal law. See Professional Beauty Supply, Inc. v. National Beauty Supply, Inc., 594 F.2d 1179, 1182 (8th Cir. 1979)(the availability of indemnity and contribution in federal securities fraud cases is a matter of federal law); Globus, Inc. v. Law Research Service, Inc., 287 F. Supp. 188 (S.D.N.Y.1968), (issue of indemnity in securities cases is to be determined under federal law); see also Donovan v. Robbins, 752 F.2d 1170, 1179 (7th Cir. 1985) (where contribution is sought by one who has had to pay damages for violating a federal statute, the "scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law"); Ameriquest Mortg. Co. v. Trans

9

Union LLC , MDL No. 1715, Lead Case No. 05-7097, 2008 U.S. Dist. LEXIS 18314 (N.D. Ill., March 5, 2008) (because indemnification claims arose out of an action based on alleged FCRA violations, federal law controlled); Daniels v. Bursey, 329 F. Supp. 2d 975 (N.D. Ill, 2004) (right to indemnification or contribution on federal claims is an issue of federal law); Lucas v. Hackett Associates, Inc. 18 F. Supp. 2d 531 (E.D. Pa. 1998) (indemnification claims, arising out of allegations of violation of federal law, even if clothed as state law tort claims, are determined under federal law).  A similar approach has been taken with actions for contribution arising out of the CEA. Fleming v. Lind-Waldlock, 922 F.2d 20 (1st Cir. 1990)(contribution claim under CEA is governed by federal law). The Court sees no reason not to apply the same rule for indemnification claims brought under the CEA.

In the Nebraska action against the Plaintiff, the CFTC did not allege any state claims.  The Complaint only referenced violations of the CEA.  Thus, there were no state claims which gave rise to the Plaintiff's legal fees in the Nebraska action. Accordingly, the Plaintiff's claims for indemnification must be resolved pursuant to federal law. See Doherty v. Wireless Broadcasting Systems of Sacramento, Inc.,151 F.3d 1129, 1130 (9th Cir. 1998) (a defendant held liable under a federal statute has a right to indemnification or contribution from another only if such right arises (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law).  The Court has found, *supra*, that there is no right to indemnification under federal statutory or common law.

Plaintiff has failed to state a claim for indemnification under either federal or state law. Accordingly, Defendant's motion to dismiss this claim is granted.

10

**II.     Breach of Contract**

Plaintiff's second cause of action is based on an alleged breach of the employment contract. The employment contract is silent on choice of law. In the absence of a choice of law by the parties, "their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has the most significant relationship to the transaction and the parties." Ohayon v. Safeco Ins. Co., 91 Ohio St. 3d 474, 747 N.E.2d 206 (Ohio 2001).  In making this determination, courts should consider " the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." Id.

In the instant case, the parties have provided no information on the place of contracting or negotiation.  The place of performance as branch manager was in Columbus, Ohio, at RCG's Columbus, Ohio, branch. The location of the subject matter of the business was not necessarily located in either Illinois or Ohio.  The domicile and residence of the Plaintiff is Ohio, the place of formation of the LLC is Illinois, and the place of business of the parties is Illinois and Ohio. The allegations giving rise to the Nebraska action generally dealt with actions taken by the Plaintiff while employed as branch manager in Columbus, Ohio. Thus, Ohio has the more significant relationship with the parties and the transactions and the Court will therefore apply Ohio contract law to the case at hand.  For purposes of a motion to dismiss, however, the Court does not believe that the choice of Illinois or Ohio law makes a difference in the determination.

To recover upon a breach of contract claim, a plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Jarupan v. Hanna, 173 Ohio App. 3d 284, 878 N.E.2d 66, 73 (Ct. App. 2007); see also MG Capital

LLC v. Sullivan, No. 01 C 5815, 2002 U.S. Dist. LEXIS 9809 (N.D. Ill. May 31, 2002) (setting forth identical requirements for establishing breach of contract under Illinois law).  The Plaintiff's employment contract, which is attached to the Complaint, required a ninety day notice prior to termination of the contract by either party, unless the employer, RCG, terminated the relationship "for cause." The contract does not specify what is considered "cause" for termination. The Complaint alleges that Delay's termination notice, effective September 2, 2005,  was given to him on September 1, 2005.  The Plaintiff has attached the termination letter which does not state that he is being fired for cause.  It simply terminates the employment relationship.  On the face of his Complaint, the Plaintiff has stated a claim for breach of contract.  Accordingly, Defendant's Motion to Dismiss on this count is denied.

### III.     CONCLUSION

For the reasons stated above, Defendant RCG's Motion to Dismiss (doc. 17 ) is granted in part and denied in part.  The Defendant's Motion to Dismiss the Plaintiff's claim for indemnification is granted. The Defendant's Motion to Dismiss Plaintiff's claim for breach of contract is denied.

It is so ORDERED.

                                             s/James L. Graham
                                             JAMES L. GRAHAM
                                           United States District Judge

DATE: May 27, 2008