**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

TODD J. DELAY,

                    **Plaintiff,**

       **vs.**                              **Civil Action 2:07-CV-568
                                          Magistrate Judge King**

ROSENTHAL COLLINS GROUP,
LLC,

                    **Defendant.**

## <u>OPINION AND ORDER</u>

This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Plaintiff Todd J. Delay's Motion in Limine to Exclude Defendants' Experts* ("*Plaintiff's Motion in Limine*"), Doc. No. 118. Defendant Rosenthal Collins Group, LLC ("RCG" or "defendant"), opposes *Plaintiff's Motion in Limine*. *Response to Plaintiff Todd J. Delay's Motion in Limine to Exclude Defendants' Experts* ("*Defendant's Response*"), Doc. No. 121. Plaintiff has filed a reply. *Reply Brief of Plaintiff Todd J. Delay in Further Support of his Motion in Limine to Exclude Defendants' Experts* ("*Plaintiff's Reply*"), Doc. No. 122. Also before the Court is *Defendant Rosenthal Collins Group, L.L.C.'s Motion in Limine to Exclude Portions of Plaintiff's Expert Report and Testimony* ("*Defendant's Motion in Limine*"), Doc. No. 123. Plaintiff opposes *Defendant's Motion in Limine*. *Plaintiff Todd J. Delay's Memorandum in Opposition to Defendant's Motion in Limine*, Doc. No. 125. For the reasons that follow, *Plaintiff's Motion in Limine* is **DENIED**. *Defendant's Motion in Limine* is **GRANTED**.

1

I.    **Background**

In January 2002, plaintiff became the branch manager of defendant's Columbus, Ohio office. *Final Pretrial Order*, Doc. No. 113, p. 4. Defendant is a Futures Commission Merchant operating numerous trading desks on the floors of the Chicago Board of Trade and the Chicago Mercantile Exchange. *Id.* at p. 3. Plaintiff registered with the Commodity Futures Trading Commission ("CFTC"), a federal agency with responsibility for administering and enforcing the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1, *et seq.,* as an "Associated Person" of defendant. *Final Pretrial Order*, Doc. No. 113, p. 4. In September 2005, the CFTC filed a civil action (the "Nebraska Action") against plaintiff alleging, *inter alia*, that he violated the CEA by manipulating the October 2003 Feeder Cattle Futures Contract, by attempting to manipulate the October 2003 Feeder Cattle Futures Contract, and by knowingly delivering false, or misleading, or knowingly inaccurate reports concerning market information that tended to affect the price of feeder cattle. *Id.* The claims asserted in that action involved acts undertaken by plaintiff during the time that he was an employee and Associated Person of defendant. *Id.*

Two of the five charges brought against plaintiff in the Nebraska Action were dismissed after the first day of trial. *Id.* at p. 5. The remaining three charges proceeded to trial and, on November 17, 2006, final judgment was entered in plaintiff's favor on all claims. *Id.* Plaintiff brought this action on June 15, 2007, seeking indemnification for all expenses, including attorneys' fees, associated with the Nebraska Action.

2

This matter is set for trial to the Court beginning December 10, 2012. *Order*, Doc. No. 114. The contested issues remaining for decision are:

> Whether Plaintiff was acting within the scope of his employment and agency with respect to the CFTC's allegations in Count 1, Count 2, and Count 3 of the Nebraska [A]ction.
>
> Whether Plaintiff was faultless with respect to the allegations in the Nebraska [A]ction.
>
> Whether Plaintiff's claim is barred by one or more of RCG's affirmative defenses.

*Final Pretrial Order*, Doc. No. 113, pp. 5-6.

On October 12, 2012, plaintiff filed *Plaintiff's Motion in Limine*, asking that the Court exclude the testimony and reports of defendant's experts, Burton Meyer and Robert D. Murphy, Ph.D. *Plaintiff's Motion in Limine*, p. 2. Mr Meyer opines that plaintiff's involvement in the cash market for feeder cattle in Nebraska (the actions giving rise to the Nebraska Action) were "not part of the business activities of RCG and were beyond the scope of the written Agreement between RCG and Delay." *Expert Report of Burton J. Meyer* ("*Meyer Report*"), attached to *Plaintiff's Motion in Limine* as Exhibit A, at p. 7. Dr. Murphy opines that plaintiff's actions were "not necessary to correctly perform his role" with defendant. *See Expert Report of Rob D. Murphy* ("*Murphy Report*"), attached to *Plaintiff's Motion in Limine* as Exhibit B, at pp. 17-18.

On November 7, 2012, defendant filed *Defendant's Motion in Limine*, asking that the Court exclude portions of the report and testimony of plaintiff's expert, Steven Manaster, Ph.D. *Defendant's Motion in Limine*, p. 1. Dr. Manaster opined that plaintiff's actions

fell within the scope of his employment with defendant. *Expert Report of Steven Manaster* ("*Manaster Report*"), attached to *Defendant's Motion in Limine* as Exhibit A, at p. 4.

## II.    Standard

The purpose of a motion in *limine* is to ensure the evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible. *See Ind. Ins. Co. v. General Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). A court should exclude evidence on a motion in *limine* only when that evidence is determined to be clearly inadmissible on all potential grounds. *Id*. When a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context. *Id*. Whether or not to grant a motion in limine falls within the sound discretion of the trial court. *Branham v. Thomas Cooley Law Sch.*, 689 F.3d 558, 560 (6th Cir. 2012) (citing *United States. v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999)).

## III. Discussion

*Plaintiff's Motion in Limine* and *Defendant's Motion in Limine* request that the Court exclude the testimony and reports of experts. Rule 702 of the Federal Rules of Evidence governs the use of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

4

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 confers upon trial judges the role of "gatekeeper" when considering the use of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). This Court has previously explained its gatekeeping role:

> The trial court's gate-keeping role is two-fold. First, a court must determine whether the proffered testimony is reliable. *See Daubert*, 509 U.S. at 590. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id*. The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id*. Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).
>
> The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593–94. *See also Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004). The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id*. (quoting *Daubert*, 509 U.S.

at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue; that is, whether the opinion is relevant to the facts at issue. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Wellman v. Norfolk and W. Ry. Co.*, 98 F.Supp.2d 919, 923-24 (S.D. Ohio 2000).

*L.S. v. Scarano*, No. 2:10-cv-51, 2011 WL 4948099, at *2-3 (S.D. Ohio Oct. 18, 2011).

Guided by the foregoing, the Court will consider *Plaintiff's Motion in Limine* and *Defendant's Motion in Limine*.

**A.** ***Plaintiff's Motion in Limine* Regarding Burton Meyer**

Burton Meyer is offered by defendant as an expert in the futures brokerage industry. Mr. Meyer has nearly 40 years experience in the futures and securities brokerage industry, working as a registered floor broker with the CFTC, as a manager and owner of brokerage firms, and as a consultant and expert witness. *Meyer Report*, pp. 1-2. Mr. Meyer's report provides in part:

Based on my review of the aforementioned documents and my almost 40 years of experience in the futures brokerage

6

> industry it is my expert opinion that the five cash
> transactions referenced in the Nebraska Action involving Delay
> and his customers were not part of the business activities of
> RCG and were beyond the scope of the written Agreement between
> RCG and Delay.

*Id.* at p. 7.

Plaintiff seeks to exclude the *Meyer Report* and Mr. Meyer's testimony on the basis that Mr. Meyer provides an opinion on a question of law – i.e., whether an employee was acting within the scope of his employment. *Plaintiff's Motion in Limine*, pp. 2-3. Defendant argues that whether an employee was acting within the scope of employment is a question of fact.[1] *Defendant's Response*, p. 2.

Plaintiff's indemnification claim is governed by Illinois law. *See Opinion and Order*, Doc. No. 85, p. 5. An implied right to indemnification under Illinois common law has been recognized "to cover situations in which a faultless agent is subject to liability for acts taken on behalf of a principal." *Livingston v. Prime Auto Credit, Inc.*, No. 00C2985, 2000 WL 1898502, at *2 (N.D. Ill. Dec. 21, 2000). In such a case, "a faultless agent may state a claim for implied indemnity against its principal where the agent was acting within the scope of the agency relationship." *Id.* (citing *Ores v. Willow W. Condo. Ass'n*, No. 94C4717, 1998 WL 852839, at *8 (N.D. Ill. Nov. 30, 1998); *Byrton Dairy Prods., Inc. v. Harborside Refrigerated Servs., Inc.*, 991 F.Supp. 977, 986 (N.D. Ill. 1997)). In order to state a claim for an implied right to indemnification, the agent must

---

[1] Notably, *Defendant's Motion in Limine* argues for the exclusion of the portions of plaintiff's expert report that relate to the expert's "legal opinion" on the "scope of employment" and how plaintiff's "behavior comports with the legal standard for scope of employment." *Defendant's Motion in Limine*, pp. 3-4.

establish: (1) that he was acting within the scope of his agency, and (2) that he was faultless. *Id.*

As to the first element of the claim, conduct of an agent falls within the scope of the agency only if:

> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits; [and]
>
> (c) it is actuated, at least in part, by a purpose to serve the master.

*Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 992 (Ill. 2007) (quoting *Pyne v. Witmer*, 129 Ill. 2d 351, 360 (Ill. 1989)(citing Restatement (Second) of Agency § 228 (1958)) (quotations omitted). *See also Adames v. Sheahan*, 909 N.E.2d 742, 754-55 (Ill. 2009) ("This court has held that all three criteria of section 228 [of the Restatement (Second) of Agency] must be met in order to conclude that an employee was acting within the scope of employment."); Restatement (Second) of Agency § 228 (1958).  "'Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'"  *Bagent*, 862 N.E.2d at 992 (quoting *Pyne*, 129 Ill. 2d at 360).

Under Illinois law, whether or not "scope of employment" is an issue of fact or law depends on the circumstances of the case:

> Where an employee's deviation from the course of employment is slight and not unusual, a court may find as a matter of law that the employee was still executing the employer's business. (*Boehmer v. Norton* (1946), 328 Ill. App. 17, 21, 24.) Conversely, when a deviation is exceedingly marked and unusual, as a matter of law the employee may be found to be outside the scope of employment. (*Boehmer*, 328 Ill. App. at 21; *see* 57 C.J.S. Master & Servant § 617(a)(3), at 414 (1948).)  But in cases falling between these extremes, where

> a deviation is uncertain in extent and degree, or where the surrounding facts and circumstances leave room for legitimate inferences as to whether, despite the deviation, the employee was still engaged in the employer's business, the question is for the jury. *Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117; *McDonnell v. City of Chicago* (1981), 102 Ill. App. 3d 578, 583; *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 493.

*Pyne*, 129 Ill. 2d at 361-62.

In the case presently before the Court, the issue of scope of employment is one of the few contested issues remaining for decision, *see Final Pretrial Order*, Doc. No. 113, pp. 5-6, and whether plaintiff deviated from the authorized scope of his employment is, at this juncture, undetermined as to both extent and degree.  Under the circumstances, it is for the trier of fact to determine, based on the evidence at trial, whether plaintiff's conduct fell within the scope of his employment with defendant.

Furthermore, although Mr. Meyer's opinion – *i.e.,* that plaintiff's actions were "beyond the scope of the written Agreement" – may bear on the issue of whether plaintiff acted within the scope of his employment, the Court notes that the two concepts are not coextensive.  *See e.g.*, Restatement (Second) of Agency § 229 (1958) ("To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.").  Accordingly, the exclusion of the report and testimony of Mr. Meyer is inappropriate at this juncture.  *Cf. Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) ("An expert opinion on a question of law is inadmissible.").

*Plaintiff's Motion in Limine* is therefore **DENIED** with respect to the report and testimony of Mr. Meyer.

9

**B.** *Plaintiff's Motion in Limine* **Regarding Dr. Murphy**

Dr. Murphy is offered by defendant as an expert in agricultural markets, including the cash and futures markets for several species of livestock. *Murphy Report*, pp. 2-3. Dr. Murphy offers his opinion "as to whether or not participation in the cash market for feeder cattle is a necessary ingredient for employment as a futures broker as alleged by Delay." *Id*. at p. 3. After a lengthy academic and theoretical discussion of commodity futures markets, cash commodity markets, connections between the two markets, price discovery and price transparency, the cash market for feeder cattle, and the CME Feeder Cattle Price Index, Dr. Murphy concludes that plaintiff's "cash market involvement was not necessary to correctly perform his role as an order solicitor and acceptor for futures market transactions per the Commodity Exchange Act." *Id*. at pp. 6-18. Dr. Murphy also opines, in the last sentence of his report, that plaintiff's involvement in the cash market for feeder cattle in Nebraska was not within the scope of his employment with defendant. *Id*. at p. 18.

Plaintiff seeks to exclude the *Murphy Report* and Dr. Murphy's testimony on the basis that Dr. Murphy purports to provides an opinion on a question of law, *i.e.*, whether an employee was acting within the scope of his employment. *Plaintiff's Motion in Limine*, pp. 2-3. As discussed *supra*, resolution of the issue of scope of employment is for the trier of fact in this case. Further, Dr. Murphy's opinion as to whether plaintiff's actions were "necessary to correctly perform his role" with defendant, *Murphy Report*, p. 3, is not determinative of whether plaintiff acted within the scope of his employment. *See,*

10

*e.g.*, Restatement (Second) of Agency § 229.

Plaintiff also seeks to exclude the opinion of Dr. Murphy on the basis that it is "wholly redundant" of Mr. Meyer's opinion and constitutes a waste of time and needless presentation of cumulative evidence under Rule 403 of the Federal Rules of Evidence. *Id.* at pp. 3-5. Rule 403 authorizes a court to

> exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. According to plaintiff, Dr. Murphy's opinion should be excluded because Dr. Murphy and Mr. Meyer present "identical conclusions on identical issues." *Plaintiff's Reply*, pp. 2-3. The Court disagrees with plaintiff's assessment in this regard.

Dr. Murphy and Mr. Meyer have different backgrounds and relied on different materials in forming their opinions; the bases for their opinions are different and they were asked to address different questions. As discussed *supra*, Dr. Murphy provided an opinion as to whether plaintiff's actions were "necessary to correctly perform his role" with defendant; *Murphy Report*, p. 3; Mr. Meyer provided an opinion as to whether plaintiff's actions were "part of the business activities of RCG and were beyond the scope of the written Agreement." *Meyer Report*, p. 7. In the Court's opinion, Dr. Murphy and Mr. Meyer's reports do not present cumulative evidence, let alone provide "identical conclusions on identical issues" that would warrant exclusion at this juncture.

Plaintiff also argues for the exclusion of Dr. Murphy's opinion

11

on the basis that it is not based on facts or data, but on his own opinion. *Plaintiff's Motion in Limine*, p. 5. According to plaintiff, Dr. Murphy formed his own version of what the lawsuit was about – *i.e.,* whether participation in the cash market was a necessary ingredient in plaintiff's employment – and then based his ultimate opinion on that version. *Id*. The Court disagrees.

Dr. Murphy was asked to evaluate the "connection between the cash and futures markets for feeder cattle" and provide an opinion as to whether participation in the cash market was necessary for employment as a futures broker. *Murphy Report*, p. 3. Dr. Murphy based his opinion on a review of documents and transcripts, his academic training, and his experience as a researcher for CME and Informa Economics. *Id*. Dr. Murphy's report directly contradicts plaintiff's responses to interrogatories, *see Defendant's Response*, Exhibit B, at p. 9 ("Plaintiff states that it is not possible to service RCG hedge account clients dealing in the futures market without, at the same time, dealing in the cash markets for many commodities"), and there is a congruity between Dr. Murphy's testimony and whether plaintiff was acting within the scope of his employment. Plaintiff may, of course, fully explore and test Dr. Murphy's opinions on cross-examination and question Dr. Murphy regarding the facts and data upon which his opinions are based.

*Plaintiff's Motion in Limine* is therefore **DENIED** with respect to the report and testimony of Dr. Murphy.

**C.** ***Defendant's Motion in Limine*** **Regarding Dr. Steven Manaster**

Dr. Manaster is offered by plaintiff as an expert in economics,

in rebuttal to defendant's exert reports. *Defendant's Motion in Limine*, p. 3. Dr. Manaster opines that the "cash and futures markets of any commodity are inextricably bound together" and that plaintiff's participation in the cash market for feeder cattle fell within the scope of his employment with defendant. *Manaster Report*, pp. 1-4, 10-11. In offering this opinion, Dr. Manaster defines the "legal standard for scope of employment" and describes how plaintiff's behavior comports with that definition. *Id*. at 4-5. Defendant argues that Dr. Manaster's definition of "scope of employment" is inconsistent with Illinois law and that he impermissibly opines on a question of law – *i.e.*, whether plaintiff's actions fell within the scope of employment. *Defendant's Motion in Limine*, pp. 3-5. Defendant seeks to exclude "the portion of Dr. Manaster's report and any testimony relating to his legal opinion." *Id*. at p. 3.

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Nevertheless, the United States Court of Appeals for the Sixth Circuit has "consistently recognized that 'opinions phrased in terms of inadequately explored legal criteria' should be excluded from evidence." *United States v. Safa*, 484 F.3d 818, 821 (6th Cir. 2007) (quoting *Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)). "'The problem with testimony containing a legal conclusion is in conveying the witness's unexpressed, and perhaps erroneous, legal standards to the jury. This invades the province of the court to determine the applicable law and to instruct the jury as to that law.'" *United States v. Nixon*, 694 F.3d 623, 631 (6th Cir. 2012) (quoting *Torres*, 758 F.2d at 150). *See*

13

*also United States v. Ohio Edison Co.*, No. 2:99-CV-1181, 2003 WL 723269 at *1 (S.D. Ohio Feb. 25, 2003).

In the case presently before the Court, Dr. Manaster's report provides a definition of the "legal standard" for "scope of employment." *See Manaster Report*, pp. 4, 10.  That definition is identical to the definition used by the Court in this order. Nevertheless, Dr. Manaster's attempt to define the "legal standard" for "scope of employment" invades the province of the Court. *See Jimkoski v. State Farm Mut. Auto. Ins. Co.*, 247 F. App'x 654, 662 (6th Cir. 2007) (citing *Torres*, 758 F.2d at 150).  Furthermore, Dr. Manaster's conclusory application of that definition in section 4 of the *Manaster Report* will in no way assist the trier of fact in understanding the evidence or in determining any factual issue. Accordingly, the portions of the *Manaster Report* and any testimony relating to the legal definition of "scope of employment," or to Dr. Manaster's evaluation in section 4 of his report explaining how plaintiff's behavior comports with that definition, will be excluded from trial.

*Defendant's Motion in Limine* is therefore **GRANTED.**

**WHEREFORE**, based on the foregoing, *Plaintiff's Motion in Limine*, Doc. No. 118, is **DENIED.**  *Defendant's Motion in Limine*, Doc. No. 123, is **GRANTED.**


Trial of this matter will begin December 10, 2012 at 9:00 a.m. The parties are **ADVISED** that, on December 11, 2012, trial will begin at 1:00 p.m.

14

November 21, 2012                        *s/ Norah McCann King*
                                      Norah M<sup>c</sup>Cann King
                                United States Magistrate Judge